494 P.2d 283

Kathleen McGAVIN, Plaintiff and Appellant,

v.

Ivan J. McGAVIN, Defendant and Respondent.

No. 12541.

Supreme Court of Utah.

Feb. 24, 1972.

2. De Vas v. Noble, 13 Utah 2d 133, 369 P.2d 290 (1962) ; Charlton v. Hackett, 11 Utah 2d 389, 360 P.2d 176 (1961).

Dennis F. Olsen, of Salt Lake County Bar Legal Services, Salt Lake City, for plaintiff and appellant.

Myrna Mae Nebeker, Salt Lake City, for defendant and respondent.

HENRIOD, Justice:

Intermediate Appeal from the trial court's order granting Mr. M's motion to

have his blood tested to determine if he was the father of a child born after a divorce had been granted.[1] Reversed with costs to Mrs. M.

In August 1969, Mrs. M filed for divorce alleging that defendant was the father of her unborn child. In September, 1969, she filed an affidavit in aid of a motion for support and cost money for confinement and for the expected child, in which she reiterated the paternity allegation. In a counter-affidavit, Mr. M denied the allegation. In December, 1969, the Findings of the trial court affirmed the allegation, and a decree was entered awarding support money and visitation rights after the expected child was born. In a motion for determination of paternity, filed March 3, 1971, $14\frac{1}{2}$ months after the divorce decree, Mr. M, by affidavit, averred that Mrs. M *had informed* him that the child was not his.[2] Mrs. M filed no responsive pleading, but appeared at the hearing, where the matter was taken under advisement. On May 17, 1971, the court in a handwritten order informally appearing on a work sheet, ordered the blood test.

It is urged that the matter was res judicata, or that Mr. M was estopped[3] from asserting a claim of extrinsic fraud, or

1. The parties have an older child whose status was not questioned.

2. At which time both parties had dispensed with the services of their former attorneys and had employed those appearing in this appeal.

3. Limberg v. Limberg, 10 Wis.2d 63, 102 N.W.2d 103, 1960.

"fraud upon the court,"[4] on the part of Mrs. M. The record before us reflects only an out-of-court assertion by Mrs. M. and a delay of 14½ months in her exhusband's claim of bitterness over the awful oathal allegation of Mrs. M in her complaint that the child was legitimate, only to admit she lied and impliedly indulged in a bit of clandestine wedlock adultery. Somehow the courts frown on such matrimonial machinations where adult persons seek, for their own personal reasons, be it money for support, or support for spite, to illegitimatize an innocent child, who under such circumstances, best would have remained birthless. One wonders whether the vernacular appellation anent illegitimates better might else apply to others than the infant.

We need not decide, however, the bona fides or applicability of the principles anent res judicata, nor the principles of the principals here involved. The claim here, whose predicate was "fraud on the court," was pursued by filing a motion in the divorce action, to set aside the divorce decree relating to custody of and support money for the child allegedly not the issue of the marriage. Such procedure did not comply with Rule 60(b), Utah Rules of Civil Procedure, Vol. 9, p. 662, Utah Code Annotated 1953. The instant case is governed by the provisions of that rule as interpreted in the case of Shaw v. Pilcher, 9 Utah 2d 222, 341 P.2d 949 (1959), which is dispositive here.

TUCKETT, J., concurs.

CROCKETT, Justice (concurring):

I concur in the opinion. But desire to add these comments. If there had existed any question as to the legitimacy of the second child it could have and should have been raised in response to the allegations of plaintiff's complaint filed in August 1969. As shown in the opinion of Justice Ellett, the defendant was aware of the subject matter, and of the allegations in the plaintiff's complaint, and also in her affidavit, bearing upon the issue now sought to be raised. The paternity of the child was adjudicated in the decree entered in December 1969. No appeal having been taken therefrom, the issue is now forever res adjudicata. This court has repeatedly held, and the authorities generally affirm, that a judgment or decree is so as to any issue that *was tried, or was triable* in a prior proceeding. See Wheadon v. Pearson, 14 Utah 2d 45, 376 P.2d 946, and authorities therein cited. It strikes me that it is fortunate that that is the way the law is and ought to be in this particular case in the interest of the welfare of these two little children, the consideration of which should transcend the interest of these quarreling adults.

4. Haner v. Haner, 13 Utah 2d 299, 373 P.2d 577, 1962.

I can see no propriety whatsoever in this attempt, commenced in March of 1971, to raise the issue of nonpaternity which appears to have erupted from the contentions of these embittered spouses who would use the children as pawns in their vendetta. My observation, and more importantly, my reading of authorities in the field of family living and psychology convince me of the importance of the brother-sister relationship, and that it is often more vital to the children than the parent-child relationship, particularly in homes broken by divorce. It seems to me that even a modicum of human decency dictates that some other means should be found to reach a tolerable accommodation between these parties than what impresses me as a ruthless attack which might have such dire effects upon innocent and unoffending little children in sacrifice to the avarice and vindictiveness of belligerent adults.

ELLETT, Justice (concurring in the result):

I concur in the result but only because the matter was attempted to be raised by a motion instead of by a suit in equity. Our statute[1] provides for changes in the divorce decree or for new orders to be made in relation to the disposal of children or the distribution of property. That statute permits changes only where circumstances have changed and is not intended to permit new findings of fact to be made in lieu of those originally made.

I am unable to see how this matter is res judicata. The matter attempted to be raised has never been litigated. It is not a fraud upon the court. It is claimed to be extrinsic fraud: that is, it is claimed that by the conduct of the plaintiff in asserting the child was defendant's, the defendant had no reason to believe to the contrary and was prevented from litigating the issue of paternity in the original suit. If this claim can be established, it would warrant relief in a separate suit in equity.[2] Had the issue been raised, a blood test could have been had before trial, and then the matter would have been set at rest.

The affidavits referred to in the prevailing opinion are required to be filed in order to assist the trial court in determining the need for temporary support. They deal only with financial matters. The plaintiff's affidavit reads:

I am pregnant with defendant's child and will need the expenses of delivery and care which will reasonably equal a monthly sum totaling $300.00.

The affidavit of the defendant was as follows:

Ivan J. McGavin, being first duly sworn upon his oath, deposes and says:

\* \* \* \* \* \*

1. Section 30-3-5, U.C.A.1953.

2. 49 C.J.S. Judgments § 372(2).

5. That the contents of the unnumbered 2nd paragraph is not correct and therefore denies the same but alleges that he will take care of any delivery by and through his group insurance plan, which the above named plaintiff well knew.

\*　　\*　　\*　　\*　　\*　　\*

I do not think these affidavits raise the issue of paternity, nor do I believe they afford a reasonable basis for believing such an issue existed. Upon the hearing based upon the affidavits the trial court ordered:

That defendant shall pay all costs of the care, and delivery, of their unborn child, for its mother's care in said delivery, and maintain his insurance for that purpose.

The mere fact that the plaintiff refuses to cooperate in the proposed blood tests leads me to suspect that she fears the result, although the chance of ascertaining that the child is not defendant's is small even if such be the fact.

I would reverse this matter without prejudice to the raising of the issue of paternity in a separate suit in equity and would award no costs.

CALLISTER, C. J., concurs in the opinion of HENRIOD, J., and concurs in the concurring opinion of CROCKETT, J.